# 9230

## FEWELL *ET AL.* v. CATAWBA POWER CO.

### (86 S. E. 947)

WATERS. RIPARIAN OWNERS. LIMITATION OF ACTIONS. CONTINUING INJURY. FORDS. ACTIONS. CHARGE. DAMAGES.

1. LIMITATION OF ACTIONS — STATUTE OF LIMITATIONS — CONTINUING INJURY—SETTING BACK WATER.—Where a power company dammed a river and installed generators, the dam alone not having the effect to set back the water to interrupt plaintiff's passageway over a ford in the river connecting their lands, an effect which was produced only by the volitional and occasional operation of a certain number of generators by the power company, each use of such number of generators, interrupting the ford, gave rise to a fresh cause of action in plaintiffs, since their damages were not caused solely by the erection of the dam, a permanent structure, and were not of a permanent and continuing nature, to bring the case within the rule that if one first and proximate cause, standing alone by itself, does a single injury that persists, only one right of action therefor arises.

2. WATERS AND WATERCOURSES—RIGHT TO FORD.—Where plaintiff riparian owners owned lands from bank to bank under a water in a river constituting a ford, they had the right to use it for a passage unobstructed by high water set back by defendant.

3. WATERS AND WATERCOURSES—ACTION—INSTRUCTION.—In an action by riparian owners against a power company, which, by building a dam and operating generators, occasionally set back water, interrupting plaintiffs' ford between their mainland lands and an island owned partly by plaintiffs and partly by defendant, a charge that if the jury found from the evidence that the exit from the ford at the water's edge on the island was not included within the boundaries of plaintiffs' land, or that they had not obtained title thereto by prescription, the jury should find for defendant, was as favorable to defendant as it could have been.

4. TRIAL—INSTRUCTION.—Where the Judge, in his charge, mentioned that he must give the jury the law applicable to any reasonable view of the evidence, the charge, otherwise proper, was not rendered improper by the Judge's statement to the jury of his duty.

5. DAMAGES—AVOIDABLE CONSEQUENCES.—Where one does an act causing loss to another for which the former is liable, it is the injured person's duty to use reasonable effort, both in labor and expenditure of money, to lessen his loss, and his recovery is limited to his expenditure of labor and money.

6. DAMAGES — OBSTRUCTION OF FORD — MINIMIZING DAMAGES — MAINTENANCE OF BOAT.—Where defendant power company, by its dam and generators, set back the water of a river, rendering a ford

between the lands of riparian owners impassable, defendant's own conduct in operating a boat at the ford was not the measure of plaintiff's duty likewise to operate a boat to minimize damages.

Before HON. C. M. EFIRD, special Judge, York, September, 1914. Affirmed.

Action by J. B. and R. E. Fewell against the Catawba Power Company. Judgment for plaintiffs, and defendant appeals.

The charge of the Court relative to plaintiffs' duty to minimize damages is as follows:

If A do an act causing loss to B for which he is liable to B, it is B's duty to use reasonable effort both in labor and reasonable expenditure of money to lesson the loss. In such case B's recovery is limited to his expenditure of labor and money so expended.

*Messrs. Osborne, Cocke & Robinson, C. E. Spencer,* and *McDonald & McDonald,* for appellants. *Messrs. McDonald & McDonald* submit: *The dam and power house being permanent structures, the plaintiffs were entitled to recover all damages sustained by them past, present and prospective, at the time they first began to suffer injury or damage either from the erection of the dam or the operation of the powerhouse, and cite* 52 Ark. 240; 20 Am. St. Rep. 174, 175, 176, and note. *Permanent nuisance:* 23 N. H. 83, 102; 55 Am. Dec. 177. *Rule forbidding multiplicity of actions:* Jones Easements, sec. 527, p. 426; 8 A. & E. Enc. of L. (2d ed.) 677, 679, 684; Gould, Waters, sec. 416; 2 Farnham, Waters, sec. 589, pp. 1168, 1170; 1 Sutherland, Damages, secs. 106, 110, 116; 4 *Ib.,* secs. 1063, 1064, 1067, 1068, 1090; 112 Mass. 334; 17 Am. Rep. 106; 55 Iowa 652; 24 Am. Rep. 792; 11 S. W. 703; 136 Ky. 319; 136 Am. St. Rep. 256, 257; 33 Ky. L. Rep. 199; 110 S. W. 305; 118 N. C. 996; 32 S. E. 379; 100 Am. Dec. 642; 69 Am. Dec. 253; note to

128 Am. St. Rep. 959; 124 Ga. 365; 52 S. E. 539; 52 Ark. 240; 6 L. R. A. 804; 20 Am. St. Rep. 174, and note; 99 Ala. 24; 14 L. R. A. 462; 167 Ill. 267; 47 N. E. 206; 103 Ind. 314; 2 N. E. 821; 53 Am. Rep. 124; 71 Neb. 444; 98 N. W. 1052; 106 Va. 461; 10 L. R. A. (N. S.) 465; 46 W. Va. 151; 76 Am. St. Rep. 806; 46 Am. Dec. 150; 118 Ill. 203; 59 Am. Dec. 341; 130 Mo. 652; 32 S. W. 651. *The damages alleged to have been sustained by the plaintiff, if any, were caused by the erection of a permanent nature, and they were of a permanent and continuing nature, and, therefore, this action is barred by the statute of limitations:* 92 Ark. 406; 135 Am. St. Rep. 191, 193, 194; 91 Kan. 40; 136 Pac. 899; 50 L. R. A. (N. S.) 388, 390, 391, 392; 106 Va. 461; 10 L. R. A. (N. S.) 465; 56 S. E. 216; 10 Ann. Cas. 179; 58 Kan. 29; 48 Pac. 631; 150 N. W. 674.

*Mr. C. E. Spencer* submits: *Action for permanent damages barred:* 47 S. C. 486. *Charge on facts:* 47 S. C. 489. *Refusal of request to charge on duty to minimize damages:* 90 S. C. 507.

*Messrs. Finley & Marion,* for respondents, cite: *As to reasonableness of use of water:* 28 A. & E. Enc. of L. 955, 956; 81 S. C. 559; 93 S. C. 420; Farnham, Waters, par. 1578. *As to boundaries:* 2 Nott. & McC. 99; 6 Rich. 90; 53 S. C. 92; 59 S. C. 240; 84 S. C. 829; 57 N. W. 1; 3 Peters 92. *Request to charge irrelevant to issues:* 32 S. E. 840; 76 S. C. 531; 69 S. C. 395; 58 S. E. 153; 57 S. C. 213. *Charge as to fords:* 2 Farnham, Waters, par. 350. *Not prejudicial:* 72 S. C. 162; 71 S. C. 444; 72 S. C. 355; 62 S. C. 380. *What is not a charge on facts in violation of the Constitution:* 47 S. C. 517; 24 S. C. 505; 37 S. C. 253; 38 S. C. 31; 17 S. C. 137; 27 S. C. 607; 80 S. E. 62; 98 S. C. 338. *Harmless:* 89 S. C. 567. *Charge on minimizing damages sufficiently full:* 84 S. C. 416; 85 S. C. 90; 83 S. C. 325; Sutherland, Damages, par. 90; 13 Cyc.

71.   *Request would have unduly emphasized a particular view:* 62 S. C. 562; 84 S. C. 526; 70 S. C. 79; 51 S. C. 460; 80 S. C. 476.   *Statute of limitations does not bar this individual action:* 23 Stats. 207; Cooley, Torts, par. 311, 612-615; 26 L. R. A. 410; 45 N. Y. Supp. 365; 8 A. & E. Enc. of L. 704; 95 S. C. 268; 24 L. R. A. (N. S.) 355.   *Act complained of was a continuing one:* 75 S. C. 82; 54 L. R. A. 534; 45 Iowa 652; 24 Am. Rep. 792; 55 Am. Dec. 177; 107 Mass. 352; 153 Mass. 53; 10 L. R. A. 210; 26 N. E. 229; 23 N. H. 85; 88 Tenn. 415; 7 L. R. A. 465; 12 S. W. 1027; 13 N. W. 537; 9 Irish Rep. (9 C. L.) 194; 10 Wend. 167; 74 N. C. 675; 32 N. E. 529; 23 Ill. App. 415; 34 Ill. App. 589; 6 L. R. A. 804; 24 L. R. A. (N. S.) 355; 25 *Ib.* 41, and note in 20 L. R. A. (N. S.) ; 25 Cyc. 1139 and 1141; 3 Am. St. Rep. 350; 21 S. E. 863; 28 S. E. 994; 151 Mass. 40; 27 Am. St. Rep. 423; 4 Sutherland, Damages, par. 1040, 1044; 32 L. R. A. 708; 55 L. R. A. 82; 25 Cyc. 1131-1139; 76 Minn. 237; 79 N. W. 92; 18 L. R. A. 390; 137 U. S. 568; 21 S. E. 524; 28 S. E. 994; 4 N. E. 88; 21 N. J. L. 243 ; Farnham, Waters, p. 1063; 59 Fed. 9; 47 N. E. 1060; 49 N. E. 269; 32 L. R. A. 708; 5 Am. & Eng. R. R. Cas. 53; 14 Am. & Eng. R. R. Cas. 293.   *No prescriptive rights acquired by defendant:* Farnham, Waters, par. 535; 25 Cyc. 1139; 74 N. E. 675; 13 N. W. 557; 22 N. J. L. 243; 10 Wend. 167; 4 N. E. 88; Jones on Easements, pars. 160, 194.

*Messrs. Glenn & Glenn,* also for respondents, submit : *Whether the use made of the water by the defendant was reasonable was an issue for the jury:* 60 S. C. 269; 81 S. C. 559; 93 S. C. 420.   *Negligence not involved:* 95 S. C. 268. *Statute of limitations:* 95 S. C. 268; 75 S. C. 82; 28 S. E. 994; 24 L. R. A. (N. S.) 354; 132 Mass. 486; Brayton (Vt.) 202; 79 Tex. 427; 111 Ky. 752; 86 Iowa. 15; 6 Colo. App. 341; 25 Cyc. 1138, 1139.   *Alleged errors not prejudicial:* 78 S. C. 80.

November 10, 1915.

The opinion of the Court was delivered by MR. JUSTICE' GAGE.

Action to recover damages, past, present, and future, for an unreasonable use by the defendant of the waters of Catawba River, whereby the plaintiffs, who are lower proprietors, are hurt. Verdict for plaintiffs. Appeal by defendant.

The record is unreasonably voluminous. The testimony consumes 298 printed pages, of which more than 200 pages are not relevant to the issues made here. The result is a considerable and useless expense to litigants and unnecessary labor for the Court and for counsel.

The defendant has constructed a dam across Catawba River, in York, lawfully and carefully, to generate electricity for transmission over wires. The dam was constructed early in 1904, and at that time eight water wheels and four generators of electricity were installed. The next year two additional generators were put in, and the next year, "in the summer of 1906," so plaintiffs admit, yet two other generators were added, so that in the latter half of 1906 there were eight generators in occasional operation. This action was begun in October, 1912.

The plaintiffs are lower proprietors of 240 acres of land on the west side of the river, and of 62 acres of land contiguous to it, but across the stream in an island, the northern part of which, some 40 acres, is owned by the defendant. At the place in issue and for some miles below it the Catawba River is not a navigable stream.

The gravamen of the plaintiffs' case is (1) : That they own in effect 302 acres of land in one body (240 and 62) through which there runs a stream of water some 50 yards wide, and across which they once enjoyed the privilege, and now have the right, to cross by a ford from one farm to another; and (2) that the defendant has periodically and wrongfully raised the water at the ford of the stream so that it is often

not practicable to go from one farm to the other. These charges are denied by the defendant, and the essence of their affirmative defense is: (1) That any right to sue which the plaintiffs may have had is barred by the statute of limitations; and (2) that defendant's use of the waters· of the river is reasonable, lawful and proper.

Without a present minute specification of the words of the exceptions, the printed briefs of the appellants' counsel makes these issues: (1) Is any cause of action which the plaintiffs may have had barred by the statute? (2). Does the testimony tend to show (a) a right in the plaintiffs, and (b) a violation of that right by the defendant? (3) Did the Court charge on the facts; and did it correctly charge the jury that the duty was on the plaintiffs to minimize the damages?

1. The action was begun in October, 1912. The dam, water wheels, electric generators, and all that which has been erected in the river by the defendant, was confessedly completed in the summer of 1906, or more ' than six years before the action begun. So that, if that alone was the act which caused one injury, the remedy is barred. The defendant strongly contends this:

That "the damages alleged to have been sustained by the plaintiffs, if any, were caused by the erection of a permanent structure, and they were of a permanent and continuing nature, and, therefore, this action is barred." (Printed brief.)

The plaintiffs say this:

"It is not the erection and maintenance of the dam across the river that interfered with the plaintiffs' use of their ford or crossing of Little River; it was not the putting in of the last four or the last two wheels or machines in the power house; it was not the obstruction of the river by a permanent structure, such as the dam or power house; it was nothing in the nature of a fixed and immovable obstruction in the stream; it was not something that was not capable of

change from day to day and from month to month.  The immediate and proximate cause of the obstruction to the ford and interference with its reasonable use by the plaintiffs was the turning on and the cutting off of the water·in the power house, the running of two, four, or six or eight wheels at the pleasure of the superintendent.   In other words, the act or the thing which proximately and immediately caused the trouble was the manipulation, change, and handling of the water gates by the superintendent.   He could and did from day to day, at his option and volition, in the turning on and off of the water in the power house, cause ·the trouble.   This, as we conceive it, is a vital if not turning point in the matter of the statute of limitations."   (Printed brief.)

The complaint is not so plainly definite as the plaintiffs' argument about what proximate cause floods the ford; but its allegations are elastic enough to suggest that the flooding does not follow the simple presence of the obstructions, but follows the uneven, periodical, and volitional operation of the obstructions.   Paragraphs 6 and 7.

The defendant's fourth, fifth, and sixth requests, refused by the Court, refer to the statute of limitations.

The Court declined to charge the requests, and, on the contrary, instructed the jury in these words:

"In an action of·this kind the plaintiff is not required by law to bring his action within * * * six years, either from the time of the complete installation of the plant, or from the time he first suffers damage therefrom."

The plaintiffs had no request so far as the case shows on the subject of the statute, and that was all that was said to the jury about the statute.   The instruction ,of· the Court was given with relation to the testimony of the witnesses.

In the essential nature of the case, what is the cause of a thing, ·and when the cause began to operate, are questions of fact.   And especially is that true when the cause is water, an uncertain element since and·before Jacob characterized

one of his sons as "unstable as water." If the testimony of the plaintiffs is to be credited, the ford in issue was generally fit for use prior to the construction of the defendant's works in 1906; and since that event the ford has been periodically unfit for use. The testimony on the one side and on the other side put sharply in issue the fact whether that has been caused by a very material increase in the volume of water at the ford. That was, therefore, a question of fact for the jury to determine.

Upon the issue of the *cause* of the increase of water at the ford the superintendent of the power company was the chief witness. He was examined, cross-examined, re-examined, and re-crossed-examined more than once. His testimony, all told, covers 50 printed pages. The pith of it on the issue now considered is: That ordinarily, when the wheels are not turning, and the water is flowing over the dam according to the course of nature, then there is no excess of water in the ford; that if the water be then turned on the eight wheels its flow down the stream is double that which went over the dam, and that there follows a rise above normal at the ford of some 16 inches; that the fewer wheels turning the less the flow, and the less the rise at the ford; that the normal run of the river is not sufficient to operate the full eight wheels, to do which the water is impounded above the dam; that the accumulation of mud above has reduced the storing capacity of the dam; that a larger quantity of water may not now be stored at this plant without making a low period in the river below, and thereby injuriously affecting the plants of the same company at Great Falls and Rocky Creek; that the eight wheels may be turned only some three months in the whole year; that the eight wheels only ran when the "river is a little full."

The dam, therefore, by the defendant's own and chief witness, did not by itself cause the rise of water in the ford; the periodical, uncertain, and volitional use of the water to turn the wheels did cause the rise. The defendant's requests

were, therefore, not sound, and the Court was right to refuse them.

If the increase of water at the ford was caused by the defendant's act of operating eight wheels, and if the eight wheels were operated only six months of each calendar year, then the plaintiffs' right to sue for the damage of the six months of one year would not affect their right to sue for the damage of the six months of another year. The action for the six months of one year might, therefore, be barred, but not that for the six months of the succeeding year. If Abraham should beat William today, and again the six following days, it would not be one tort, but seven, and the right to sue on each would be barred as time ran against the act. If a way should be permanently closed by a granite wall wrongfully erected by William to the hurt of Abraham, Abraham, though he suffer inconvenience every day in the year thereafter, would have only one cause of action against William (and he must sue on it within the statutory period).

In the case at bar, which is betwixt those two above stated, the act, which was the turning of water on eight wheels and done in one year, was not synchronous with the act which was done the year before; it may have come from a like, but not from the same, cause, except remotely. The old rule that the continuance of a nuisance created every day a new nuisance has been modified in recent years. It is not practicable to state one rule for the starting of the statute, so as to bar action, which will apply to every possible case. It is not desirable to attempt to do so; we cannot anticipate what may happen in a world of multiform forces and new appliances.

In general terms it is true, if one first and proximate cause, standing alone, by itself does a single injury, though the injury persists, only one right of action therefor arises (and the remedy must be sought within the statutory period). But there are transactions in which the injured

party is not compellable to sue upon the instant a first injury is suffered. And we are of the opinion that this is such a case. So much is suggested in the Lawton case, in 75 S. C. 82, 55 S. E. 128. The rule, with the many modifications of it, is stated in 25 Cyc. 1135, in 8 R. C. L. 91 and 92, and 2 Farnham, p. 1858. See *Ohio etc. Ry. Co.* v. *Wachter,* 123 Ill. 440, 15 N. E. 279, 5 Am. St. Rep. 532, and notes.

The circumstance in this case that the plaintiffs were ordered, on the defendant's motion, to prove all damages, past and prospective, does not alter the essential character of the wrongs done by the defendant.

2. If, therefore, the plaintiffs be in time, the real issue is, has their *right* been breached? The plaintiffs confessedly proved a good paper title to a parcel of land on the west bank of the river, and the lower half of the island in the river just across from that land on the west bank, and contiguous to it. Stated differently, the plaintiffs proved paper title to two parcels of land contiguous to each other, apparently divided by a stream of water, but not really divided at all, a stream of water only runs across the whole parcel. The particular right of the plaintiffs alleged to have been breached by the defendant is the hindered opportunity to pass from one place to another place on their own land. The obstruction to passage, hitherto adverted to and not now necessary to be again discussed, is an excessive presence of water at a ford.

The real contention of the defendant is that, by the plaintiff's own witness, Chrietzburg, when the passenger (proceeding from the main land to the island and having passed through the water or ford) "gets up hill out of the *approach* of the ford he is on the company's land," and he must have proved by deed or by prescription the right to there traverse the company's land. But granting that after the passenger has gone through the water, and through the approach, and entered upon the company's land, yet that land and the way over it was never in issue. The watered part of the route

on the plaintiffs' own land is that which is in issue. That
which the appellant calls the "approach" to the ford on the
island side was never covered by water. Whether or not
the plaintiffs have the right to ascend through the
"approach" on the defendant's land, yet if they own the land
under the water (called the ford) they have the right to use
it for a passage, unobstructed by high water. The entire
passage from the west bank to the island bank was on the
land of the plaintiffs. The pleadings did not put in issue
any right of the plaintiffs, when they had crossed the water
and ascended the approach to go over the defendant's land
to reach their island farm.

The Court, however, charged the jury that the plaintiffs
had proved paper title to the 302 acres, and left it to the jury
to locate the lines betwixt the parties on the island side, and
so to find if the plaintiffs did go off their land and on the
defendant's land in passing from the ford to the island
farm. That issue of fact was properly left to the jury.
There was testimony on both sides. The Court also
charged the jury how the plaintiffs might have secured by
prescription a way over the company's land, if the passage
was over it. The charge was as favorable to the defend-
ant, at the words we have italicized, as it could have been.

The following is the instruction on the whole subject now
under view, and it is not liable to the errors charged, but
was a safe chart for the jury:

"Plaintiff has shown paper title to 62 acres of land in the
island and to the adjoining main land on the west side; and
this being a nonnavigable stream this title carries title to the
land in the bottom of Little River between the two tracts.
But title to land is one thing and the location of the boundary
line is another. Whether a party has shown title to a tract
of land—that is, paper title—is a question of law and is for
the Court. Where the boundary line of that tract of land
is is a question of fact, and is for the jury. And in the loca-

tion of land lines natural objects, such as streams, rocks, and trees, govern courses and distances. So, gentlemen, *I charge you that if you find from the evidence that the exit to the ford at the water's edge on the island side is not included within the boundary lines of plaintiff's land, or that he has not obtained the title thereto by prescription as I have told you in reference to the way, then you should stop there and find for the defendant.* But, if you find that it is so included, that is to say, now if you find the exit of the ford on the island side is included within the boundary lines of plaintiff's paper title, then your next inquiry would be whether the acts alleged by the plaintiffs as injurious to him have been done by the defendant, that is, whether defendant by installing, maintaining, and operating its plant has made an unreasonable use of the water in the stream."

3. The charge is clearly not in contravention of the constitutional prohibition to state the facts. This is the specific language excepted to:

"Upon the pleadings in this case, gentlemen, I don't think this question of way appurtenant or way in gross is relevant; but as I understand the rule it is that the Judge must give the jury the law that is applicable to any *reasonable view of the evidence* and in *view of the testimony that has been introduced* in this case I charge you on that subject."

The Court is bound to state the law which is applicable to a "reasonable view of the evidence;" he ought to state none other. *State v. DuRant*, 87 S. C. 534, 70 S. E. 306. The case is not altered if the Judge tells the jury he has stated the law in that relation. The case of *Norris v. Clinkscales*, 47 S. C. 488, 25 S. E. 797, cited by appellant to sustain their contention, is so full on that issue as to be liable to misconstruction.

4. The last subject discussed by the appellant is, the refusal of the Court to charge the language of the defendant's request about the duty of the plaintiff to minimize damages.

The charge which the Court did make on that subject has not been challenged; it cannot be.   Had the Court told the jury "if the plaintiffs could reasonably have avoided their damages, by *building and operating a ferryboat* running from their main land to their part of the island or by any other reasonable means, it was their duty to do so," that would have been more nearly to a charge on the facts.   The testimony shows the defendant operated such a boat; it had no right to have it suggested to the jury that its conduct thereabout should be a standard for the plaintiff's conduct about the same matter.

Tried already three times on Circuit, we are of the opinion that there is no good ground to remand this cause for a fourth trial.   The record discloses no substantial error.

The judgment of the Circuit Court is affirmed.

Mr. Chief Justice Gary and Mr. Justice Watts concur in the opinion announced.

Mr. Justice Hydrick concurs in the result.

Mr. Justice Fraser, being disqualified, took no part in the decision of this case.