7884

EUREKA COTTON MILLS v. WESTERN UNION TEL. CO.

1. A TELEGRAPH COMPANY is an independent contractor or common carrier of intelligence for hire and is liable in tort to sender or addressee for the breach of its public duty.
   MR. JUSTICE WOODS *dissents as to the doctrine last stated.*
2. SUBROGATION.—A TELEGRAPH COMPANY is liable to the sender of a message for its negligence in leaving out of the message delivered certain words whereby the sender was made to offer to addressee goods at a lower price than in the initial message for the loss sustained by it in complying with the offer so altered.

Mr. Justice Woods *thinks the sender was under no legal duty to sell the goods at a price less than that written in the initial message, and the cause of action for error in transmission is in the addressee; but concurs in the result on the ground that the carrier is liable and the sender is entitled to the damage under the doctrine of subrogation because the law was not settled.*

3. Damages—Issues.—Evidence tending to show the addressee of a message accepted an offer of goods at a less price than offered in the initial message by reason of error in transmission, and that at that time the goods were worth on the market as much and more than the price named in the initial message is sufficient to send the issue of damages to the sender from furnishing the goods at the erroneous price, to the jury.

4. Interest.—Allowance of interest on recovery from date of service of complaint is favorable to appellant.

5. Rehearing refused.

Before Hydrick, J., Lancaster, October, 1908.  Affirmed.

Action by Eureka Cotton Mills against Western Union Telegraph Company.  Defendant appeals.

*Messrs. Geo. H. Fearons* and *Nelson, Nelson & Gettys,* for appellant, cite: *The English rule is that telegraph company is independent carrier:* 87 Tenn. 554, 756; 11 S. W. 783; 4 L. R. A. 660; 30 L. R. A. 444; 62 S. W. 1119. *Measure of damages:* 78 S. C. 427.  *No interest should be allowed in actions in tort:* 70 S. C. 83; 71 S. C. 386; 72 S. C. 516; 4 McC. 392.

*Messrs. Ernest Moore* and *D. R. Williams,* contra, cite: *Telegraph company is the agent of the sender:* 27 Ency. 1092 and cases cited; 51 S. E. 290; 46 S. E. 826; 40 S. E. 815; 35 Pa. St. 298; 78 Am. Dec. 338; 40 Wis. 431; 27 Ency. 1093; 56 Am. Rep. 901; 29 Vt. 127; 1 Am. St. R. 357; 54 Md. 138; 39 Am. R. 359.  *Plaintiff was bound by the terms of the message as delivered:* Bish. on Con., sec. 328; 93 Am. Dec. 511.  *Measure of damages:* 78 S. C. 428.

*Interest may be allowed as damages:* 3 Suth. on Dam. 238, 174, 534, 677; 13 Cyc. 85, 88.

The opinion in this case was filed on March 21, 1911, but held up on petition for rehearing until

April 28, 1911. The opinion of the Court was delivered by

JUDGE ROBERT ALDRICH, *acting Associate Justice in place of* MR. JUSTICE HYDRICK, *disqualified.* This was an action for damages alleged to have been sustained by plaintiff as the result of the erroneous transmission by the defendant of a message from Eureka Cotton Mills, Lancaster, S. C., to Jenckes Spinning Company, Pawtucket, R. I., and was commenced by the service of a summons and complaint on the defendant on the 17th day of August, 1907. The cause came on for trial before his Honor, D. E. Hydrick, and a jury, at the October, 1908, term of Court for Lancaster county, and resulted in a verdict for plaintiff, on the 23d day of October, 1908, for $460.75, with interest.

The complaint alleges:

1. That the plaintiff is a corporation under the laws of South Carolina, under the name of Eureka Cotton Mills, alleging the usual power of corporation.

2. That the defendant is a corporation, under the name of Western Union Telegraph Company, alleging the usual power of corporation.

3. "That the plaintiff was at the times named in the complaint engaged in the manufacture and sale of cotton yarns and other products, and having its places of business at Chester and at Lancaster, in said State, as empowered to do by its charter.

4. "That the defendant is engaged in the business of a telegraph company, of transmitting messages for hire from the said town of Lancaster by wire to Pawtucket, R. I., and from said Pawtucket by wire to Lancaster, aforesaid, and

is empowered by its charter to engage in said business, and is a common carrier of messages by telegraph for hire between the points aforesaid.

5. "That on the 26th day of October, 1906, the Jenckes Spinning Company of Pawtucket, R. I., sent to this plaintiff, by and through the agency of the said defendant company, a telegram addressed to this plaintiff and reading as follows, to wit: 'Cannot get firm offer on twenty-fours, but think can land order for one hundred thousand pounds if you can make price twenty-four cents. Customer not inclined to buy more on this market. Wire quick.' Which telegram was signed by the said Jenckes Spinning Company, and was on said day duly delivered by the said defendant to this plaintiff.

6. "That in reply to the said telegram, on the same day the plaintiff delivered to the defendant a message to be transmitted to the said Jenckes Spinning Company at Pawtucket. R. I., by wire, reading as follows: 'Telegram. Will book twenty-fours single following in consideration of you at twenty-four and a half cents. Best can do;' said message being signed by the plaintiff and addressed to the said Jenckes Spinning Company at Pawtucket, R. I.; which said message was delivered by this plaintiff to the said defendant at Lancaster, on the day last aforesaid, and accepted by the said defendant for transmission for hire on that day, and that plaintiff paid to the said defendant the charges for transmission of said message as above delivered to it.

7. "That said defendant, not regarding its duty in the premises, negligently and carelessly, and in gross neglect of its said duty, and in violation of its said contract to deliver the said message, failed to send the said message as intrusted to it for delivery to the said Jenckes Spinning Company, but that the said defendant, in violation of its contract with this plaintiff to deliver the said message as above given, carelessly and negligently, and in gross neglect of its said contract and duty, failed to correctly transmit and deliver the

said message as delivered to defendant for transmission; and that said defendant delivered to the said Jenckes Spinning Company at Pawtucket, R. I., a garbled and entirely different and incorrect message, purporting to be sent to them by this plaintiff, and reading as follows, to wit: 'Telegram. Will book twenty-fours single following in consideration of you. Best can do;' the said defendant entirely omitting and failing to deliver to the said Jenckes Spinning Company the six words occurring in the said message as delivered for transmission, to wit, the words, 'at twenty-four and a half cents;' which words of the said message as delivered for transmission were by the said defendant carelessly and negligently, and in gross neglect of its said contract and duty in these premises, omitted and not delivered as a part of the telegram aforesaid.

8. "That the said message as delivered by this plaintiff for transmission was in reply to the telegram from the Jenckes Spinning Company before recited, and that the meaning of the said message as so delivered for transmission was that this plaintiff would deliver one hundred thousand pounds of the yarn specified at the price of twenty-four and one-half cents per pound, less the usual trade discount of five per cent. and three per cent. if paid in ten days.

9. "That the said message as transmitted and delivered by the defendant, with the alteration thereof by the omission of the six words as aforesaid, became an acceptance of the proposition contained in the telegram of the said Jenckes Spinning Company for the purchase of the said one hundred thousand pounds of yarns at twenty-four cents, with same discounts as aforesaid, instead of twenty-four and a half cents per pound; and that the said Jenckes Spinning Company immediately, upon receipt of the said garbled telegram so carelessly and negligently transmitted to them by the said defendant, ratified and confirmed the said transaction and made sale of the said yarns to its customers upon the basis of paying this plaintiff the said sum of twenty-four

cents per pound for the same, less the usual trade discount as aforesaid, and that by reason of the negligent and careless acts of the defendant in so transmitting the said garbled and incorrect form of message aforesaid, omitting therefrom the words aforesaid, plaintiff became bound to furnish, and did furnish and deliver the said yarns to the said Jenckes Spinning Company at and for the price of twenty-four cents per pound, less the discount as aforesaid, and did furnish and deliver the said one hundred thousand pounds of yarns to the said Jenckes Spinning Company at said price, and was forced to furnish and deliver the same by reason of the negligent acts of the defendant and in order to prevent still greater loss and damages which might result to this plaintiff if it failed to carry out the offer and contract aforesaid as carelessly, negligently and erroneously transmitted by the said defendant.

10. "That, by reason of the negligent acts and omissions and the carelessness and gross neglect of the defendant in the transmission of the message aforesaid, this plaintiff suffered great loss and damage, in that the price and value of the said yarn was twenty-four and one-half cents per pound; whereas, by reason of the wrongful acts, carelessness and negligence of the said defendant, as aforesaid, this plaintiff was forced to accept twenty-four cents per pound, less the discount aforesaid, and that plaintiff thereby suffered actual loss and damage to the amount of five hundred and sixty and 75-100 ($560.75) dollars, and besides interest thereon from the 8th day of November, 1906.

11. "That this plaintiff duly notified the said defendant in writing of the facts and of the damage aforesaid, on the 8th day of November, 1906, and demanded payment of the loss and damage aforesaid, but that said defendant has hitherto failed and refused to pay the same or any part thereof.

"Wherefore, the plantiff prays judgment for the sum of five hundred and sixty and 75-100 ($560.75) dollars, with

interest thereon from the 8th day of November, 1906, the actual damages suffered by this plaintiff by reason of the wrongful acts of the defendant as aforesaid, and for the costs and disbursements of this action."

The defendant, answering the complaint, alleges:

1. "That it has not knowledge or information sufficient to form a belief as to the truth of paragraphs 1, 3 and 8.

2. "Admits allegations of paragraphs 2, 4, 5 and 6.

3. "Denies allegations of paragraphs 7, 9, 10 and 11, and demands that complaint be dismissed."

The testimony substantially establishes the material facts of the complaint; in fact, there is little or no difference between the parties upon the substantial facts of the case. The contention is over the law applicable thereto.

Upon the conclusion of the testimony defendant moved for a nonsuit, upon the following grounds:

1. "Because the damage sustained by plaintiff, if any, was not the direct and proximate result of the negligence complained of on the part of the defendant, but was the result of plaintiff's own voluntary act:

(a) "Because from the evidence it appears that the Jenckes Spinning Company, acting upon a telegram from the Eureka Cotton Mills, which was a mistake, made a contract in its own name, not binding on the Eureka Cotton Mills, which does not give the said mills a right to recover from the defendant, where the said mills voluntarily carried out the contract after notice of the mistake.

(b) "Because the evidence shows that the Eureka Cotton Mills used the defendant company as a means of communication with the Jenckes Spinning Company, which, as a matter of law, does not make the defendant the agent of the said mills, and said mills were not bound to the Jenckes Spinning Company, the receiver of the message, by the terms of the transmitted telegram, in which the defendant negligently omitted certain words.

(c) "Because the evidence established the fact that the plaintiff, before shipping the yarn to the Jenckes Spinning Company, discovered the mistake in the telegram, and its shipment of the yarn thereafter was a voluntary act on its part, and if any loss was sustained thereby the defendant cannot be held responsible therefor.

2. "Because the evidence fails to show that the plaintiff has sustained any damage whatsoever, in that:

(a) "The undisputed evidence of the plaintiff's own witnesses shows that, even if the telegram in question had been correctly transmitted, the Jenckes Spinning Company would have refused the offer therein contained and would not have purchased the yarn from plaintiff at the rate of twenty-four and a half cents per pound."

The Court below overruled the motion for nonsuit, and the case was submitted to the jury upon the evidence, who found for the plaintiff the sum of four hundred ninety-seven and 90-100 ($497.90) dollars.

The defendant moved to set aside the verdict and for a new trial, upon the following grounds:

1. "Because the damage sustained by plaintiff, if any, was not the direct and proximate result of the negligence complained of on the part of the defendant, but was the result of plaintiff's own voluntary act:

(a) "Because from the evidence it appears that the Jenckes Spinning Company, acting upon a telegram from the Eureka Cotton Mills, which was a mistake, made a contract in its own name, not binding on the Eureka Cotton Mills, which does not give the said mills the right to recover from the defendant, where the said mills voluntarily carried out the contract after notice of the mistake.

(b) "Because the evidence shows that the Eureka Cotton Mills used the defendant company as a means of communication with the Jenckes Spinning Company, which, as a matter of law, does not make the defendant the agent of said mills, and said mills were not bound to the Jenckes

Spinning Company, the receiver of the message, by the terms of the transmitted telegram, in which the defendant negligently omitted certain words.

(c) "Because the evidence established the fact that the plaintiff, before shipping the yarn to the Jenckes Spinning Company, discovered the mistake in the telegram, and its shipment of the yarn thereafter was a voluntary act on its part, and if any loss was sustained thereby the defendant cannot be held responsible therefor.

2. "Because the evidence fails to show that plaintiff has sustained any damages whatsoever, in that:

(a) "The undisputed evidence of plaintiff's own witnesses shows that, even if the telegram in question had been correctly transmitted, the Jenckes Spinning Company would have refused the offer contained and would not have purchased the yarn from plaintiff at the rate of twenty-four and a half cents per pound."

The Court refused the motion for a new trial, and passed an order for leave to the plaintiff to enter up judgment against the defendant for the amount found by the jury.

Judgment was duly entered upon the verdict of the jury, and the defendant appealed from the rulings and charge of his Honor, the Circuit Judge, for his refusal to grant defendant's motion for a nonsuit and from the judgment entered, upon the following exceptions:

1. "That his Honor erred in refusing defendant's motions for a nonsuit and for a new trial, upon the following grounds:

"Because the damage sustained by plaintiff, if any, was not the direct and proximate result of the negligence complained of on the part of the defendant, but was the result of plaintiff's own voluntary act:

(a) "Because from the evidence it appears that the Jenckes Spinning Company, acting upon a telegram from the Eureka Cotton Mills, which was a mistake, made a contract in its own name, not binding upon the Eureka Cotton

Mills, which does not give the said mills a right to recover from the defendant, where the said mills voluntarily carried out the contract after notice of the mistake.

(b) "Because the evidence shows that the Eureka Cotton Mills used the defendant company as a means of communication with the Jenckes Spinning Company, which, as a matter of law, does not make the defendant the agent of said mills, and said mills were not bound to the Jenckes Spinning Company, the receiver of the message, by the terms of the transmitted telegram, in which the defendant negligently omitted certain words.

(c) "Because the evidence established the fact that the plaintiff, before shipping the yarn to the Jenckes Spinning Company, discovered the mistake in the telegram, and its shipment of the yarn thereafter was a voluntary act on its part, and if any loss was sustained thereby the defendant cannot be held responsible therefor.

2. "That his Honor erred in refusing defendant's motions for a nonsuit and for a new trial, upon the ground:

"Because the evidence failed to show that plaintiff has sustained any damages whatsoever, in that:

(a) "The undisputed evidence of the plaintiff's own witnesses shows that, even if the telegram in question had been correctly transmitted, the Jenckes Spinning Company would have refused the offer therein contained and would not have purchased the yarn from plaintiff at the rate of twenty-four and a half cents per pound.

(b) "There is no evidence that the cost to plaintiff of manufacturing said yarn was in excess of the price for which it was sold, to wit, twenty-four cents per pound, and any profits plaintiff may have made on said yarn is merely speculative and not a proper element of damage.

3. "That his Honor erred in ruling upon defendant's motion for a nonsuit: 'If the Jenckes Spinning Company sent a message to the Eureka Cotton Mills by the Western Union Telegraph Company, the Western Union Telegraph

Company was its agent; and when the Eureka Cotton Mills sent a message by the Western Union Telegraph Company to the Jenckes Company, the Western Union was its agent.  And if my agent does something that injures somebody else, I am responsible for that injury.  If my agent does something negligent, and makes a contract binding upon me, the agent is responsible to me for his negligence.' The error being that the uncontradicted and undisputed testimony of plaintiff's own witnesses showed conclusively that in transmitting the message in suit from the Eureka Cotton Mills to the Jenckes Spinning Company the defendant was the agent of the Jenckes Spinning Company, and his Honor should have held, as a matter of law, that the plaintiff was not responsible to the Jenckes Spinning Company for the negligence of the defendant.

4. "That his Honor erred in instructing the jury to award interest to the plaintiff from the date of the complaint.  The error being that there was no testimony tending to establish any date from which plaintiff was entitled to recover interest."

The exceptions raised practically three points:

1. That the damages sustained, if any, was not the direct and proximate result of the defendant's negligence, but was the result of plaintiff's own voluntary act.

2. That the evidence failed to show that the plaintiff has sustained any damages for which the defendant is liable.

3. That the plaintiff was not entitled to interest from the date of the complaint.

The vital question raised by the appellant before this Court is, whether or not one who employs a telegraph company can be held to the terms of a message erroneously transmitted and delivered to the addressee.  The exact question has never been decided in this State, and the decisions of other States are in great conflict. The Courts of some States hold that the sender is bound by the terms of the message as delivered, and this view is based

upon the theory that the telegraph company is the agent of the sender. Other authorities hold that the telegraph company is the agent of both sender and addressee; while the English rule, which has been adopted by other of our States, is that as between the sender and addressee the telegraph company is not to be considered an agent of either party, but as an independent contractor,—a common carrier of intelligence for hire,—and is liable in tort to either party, sender or addressee, for the breach of its public duty. We hold this to be the correct view; both parties have an interest in the message, either may be injured by the failure of the telegraph company to perform its contract; and it is not for the contracting party who is in fault to parcel out the responsibility between the parties for whom it is dealing and decide to which one it will owe responsibility.

It is contended that the plaintiff has no cause of action, because it sustained no loss by reason of the failure to deliver the telegram as sent; that it was not liable in any sense to the addressee of the message for the failure of the telegraph company to perform its duty, and that it voluntarily assumed a loss it had not sustained and for which it was not liable, and has no cause of action against the defendant. The plaintiff employed the defendant to transmit this message and paid its reasonable charges for doing so, which brought the defendant into contractual relations with the plaintiff, and if, by reason of its breach of duty, the plaintiff sustained a loss, either directly to the sendee of the message or by loss of business through its failure to protect its correspondence, or in any other way, as the result of the failure of the defendant to fulfill its contract, the defendant is liable for such damage as the plaintiff sustained by reason thereof.

On the question of damages defendant contends that the plaintiff sustained no loss by reason of the failure to transmit the message in the original terms, because, if the mes-

sage had been correctly transmitted, the Jenckes
Spinning Company would not have bought the goods
at twenty-four and a half cents per pound. The
question of damages was one peculiarly for the jury upon
the evidence; and there is evidence that the goods were
worth twenty-four and a half cents per pound, and even
twenty-five cents per pound, which the plaintiff could not
obtain by reason of its having to furnish this large order
within a limited time. We think the evidence sufficient to
sustain the verdict of the jury on the question of damages.

On the question of interest, where the demand is liqui-
dated, or there is no dispute as to the amount in the event
of liability, the amount draws interest from the time
of demand and refusal, and the allowance of interest
only from the commencement of the action is fully
as favorable to the defendant as it could demand.

It is the judgment of this Court that the judgment of the
Circuit Court be affirmed.


MR. JUSTICE WOODS, *concurring in the result.* I concur
in the affirmance of the judgment, but cannot escape the
conviction that the judgment of affirmance has not been
placed in the majority opinion on sound legal principles.
As important questions are involved, which have not here-
tofore been considered by this Court, I venture to state my
views of the law applicable to them.

After much doubt and discussion these propositions may
be regarded recognized in the cases best considered by the
Courts of this country.

First. A telegraph company does not hold the relation of
agent or servant to either the sender or sendee of a message,
for neither the sender nor the sendee have any control over
its operation or management, either as principal or
master. On the contrary, the relation of the tele-
graph company to both parties is that of an independ-

ent contractor engaged in a business to which attaches the duties and obligations of public service.

Second. As such independent contractor, engaged in a public service, a telegraph company is liable in tort to either sender or sendee, who suffers injury as the proximate result of its negligent failure to perform its public duty to deliver telegrams accurately and promptly.

Third. The telegraph company being an independent contractor, engaged in a public service in nowise subject to the control of those who deliver messages to it for transmission, it follows that the sender of a message does not undertake and is not under the duty to the sendee to see that the telegraph company delivers his message as written, but is bound by it only when transmitted as given by him to the telegraph company.

Under these rules either the sender or sendee has a right of action for loss incurred by him from the failure of the telegraph company to transmit as written a message accepting an offer to sell or to buy, or a business message of any kind, provided the evidence shows loss from some legal liability incurred or business design frustrated by the mistake.

In this case the Jenckes Spinning Company, on October 23, 1909, delivered to the defendant company for transmission to the plaintiff the following message, which was duly delivered to the plaintiff as written: "Can't get firm offer on 24's, but think we can land orders for hundred thousand pounds if you make 24 cents. Customer not inclined to buy more on this market. Wire quick." This was an inquiry if the plaintiff would authorize the Jenckes Spinning Company to sell for it on commission one hundred thousand pounds of yarn at twenty-four cents per pound. In reply the plaintiffs, on October 24, 1909, wrote and delivered to the defendant company a message in these words: "Telegram. Will book 24's single following in consideration of you at twenty-four and a half cents. Best can do." This

telegram meant that the plaintiff would sell one hundred thousand pounds of yarn at twenty-four and one-half cents a pound. The defendant company, in transmitting this message, changed the price required from twenty-four and one-half cents to twenty-four cents.

The evidence tended to show that on receipt of the message, so altered, the Jenckes Spinning Company accepted an offer from a third party for the yarn on a basis of twenty-four cents a pound. The plaintiff, being advised of the mistake on the 26th of October by the message from the Jenckes Spinning Company accepting the offer it supposed to be made, immediately sent another message explaining the mistake and refusing to sell at twenty-four cents. Afterwards the plaintiff, on demand of the Jenckes Spinning Company, yielded its position and shipped the yarn at the price of twenty-four cents, and then brought this action for the difference of one-half cent per pound, alleging twenty-four and one-half cents to be the value of the yarn. The case turns, under the principles stated, on the question whether the plaintiff by reason of the mistake in the message incurred any legal liability resulting in loss, or was so frustrated in any business design that loss resulted.

There is no evidence whatever that the offer as written by plaintiff would have been accepted by the Jenckes Spinning Company, and, therefore, the plaintiff did not lose any bargain which it might have made but for the mistake. As we have endeavored to show, the plaintiff was not bound by the message as changed by the telegraph company when delivered, and, therefore, incurred no obligation to sell its yarn at twenty-four cents a pound. For these reasons it seems clear that the plaintiff had no cause of action in its own right against the telegraph company. The only party that incurred any liability and that could have suffered any loss from the mistake in the telegram was the Jenckes Spinning Company, and it alone had a right of action against the defendant.

The principles I have stated seem to be so well founded in reason, and so convenient and just in practical application, that I shall not repeat the arguments in their support which have been so often stated.   The following authorities support the conclusion reached: *Pepper* v. *Telegraph Co.,* 87 Tenn. 554, 11 S. W. 783, 4 L. R. A. 660, 10 Am. St. Rep. 699; *Shingleur* v. *Tel. Co.,* 72 Miss. 1030, 18 Sou. 425, 30 L. R. A. 444; *Harrison* v. *W. U. T. Co.* (Texas), 10 Am. & Eng. Corp. Cases 600; *Postal Co.* v. *Schaefer* (Ky.); 62 S. W. 1119; *Strong* v. *W. U. Tel. Co.* (Idaho), 109 Pac. 917; Gray, Communication by Telegraph, sec. 104.   In England and Scotland the view that a sender of a telegram is bound by the terms of the message negligently changed is repudiated.   *Henkel* v. *Pape,* L. R. 6, Ex. 7; *Verdin* v. *Robertson,* 10 Ct. Ses. Cas., S. 3d series, 35.   The following cases have been cited as supporting the opposite doctrine, but upon examination it will be found that in none of them was the exact point under consideration necessarily decided.   *Dunning* v. *Roberts,* 35 Barb. 463; *New York P. T. Co.* v. *Dryburg,* 78 Am. Dec. 338; *Durkee* v. *Vermont C. R. Co.,* 29 Vt. 127; *Saveland* v. *Green,* 140 Wis. 431; *Ayer* v. *W. U. T. Co.* (Mo.), 1 Am. St. 253.   The only case clearly decided on the doctrine that the sender is absolutely bound by the terms of his message, though delivered in a changed condition, is *Shotter* v. *W. U. T. Co.,* 71 Ga. 760.

The view of the majority of this Court is that when any mistake occurs in a telegraph message, in the course of a negotiation or transaction, the parties may themselves adjust the loss and say to whom the telegraph company shall be liable.   The sufficient and conclusive answer to this proposition, which, as it seems to me, will lead to confusion and inconvenience, is found in the indisputable principle that the law of the land, and not the action of the interested parties, determines the person in whose favor a liability exists and may be asserted.   As I understand the law, it declares the liability, if any, which the telegraph company is

under for its mistake in this case to be in favor of the Jenckes Spinning Company alone; and by that liability the Jenckes Spinning Company was amply protected. It is not pretended that there was any attempt at assignment by the Jenckes Spinning Company to the plaintiff, or that the plaintiff was in anywise a trustee for the Jenckes Spinning Company.

It follows under the principles which I have endeavored to state that the Eureka Cotton Mills did not have any cause of action in its own right against the telegraph company, because it was bound only by the message as written by it and not by the altered message. I think, however, that the defendant should not be allowed to escape payment for the loss due to its negligence, and that such a result can be avoided and the judgment affirmed on the principle of subrogation. There can be no doubt under the evidence that the telegraph company was under a liability to the Jenckes Spinning Company to make good any loss incurred by it in consequence of any mistake in the message; and the Eureka Cotton Mills relieved it of having to pay this loss by shipping the yarn according to the telegram as delivered. The Jenckes Spinning Company cannot now recover of the telegraph company, because the Eureka Cotton Mills has relieved it of loss. It would be unjust to allow the telegraph company to escape liability altogether on account of the error of the parties as to their rights. It is true that the rule of law is well established that subrogation will not be allowed in favor of one whose legal rights are in no peril, but who comes in and pays out money gratuitously or as a mere volunteer. One who claims subrogation must show some form of compulsion arising from an actual or supposed peril to his own rights. *Gadsden* v. *Brown,* Speer's Equity 42.

The tendency now is to extend the doctrine of subrogation, and it is often applied in furtherance of justice to relieve those who have paid out money or incurred liability

under a mistake. It is true that the plaintiff was under no real obligation to ship the yarn at twenty-four cents a pound; but the law on the subject in this State had never been declared, and the authorities showed a difference of opinion in other Courts. Under these conditions, it would be applying a very stringent rule to hold the plaintiff to be a mere volunteer in shipping the yarn and thus relieving the telegraph company of its liability to the Jenckes Spinning Company. *In this particular case,* because the law was unsettled, when the plaintiff relieved the Jenckes Spinning Company of its loss, the plaintiff should not be regarded a mere volunteer and should be allowed to claim subrogation to the rights of the Jenckes Spinning Company, and hold its judgment against the defendant on that ground.

Petition for a rehearing was refused by formal order revoking stay of remittitur, filed April 28, 1911.