HARPER *ET AL.* v. WESTON UNION TELEGRAPH CO.

(130 S. E., 119)

1. TELEGRAPHS AND TELEPHONES—TELEGRAPH COMPANY, INDEPENDENT CONTRACTOR LIABLE TO BOTH SENDER AND ADDRESSEE FOR BREACH OF DUTY.—Telegraph company transmitting message occupies position of independent contractor or common carrier of intelligence for hire, and is liable to both sender and addressee for breach of duty resulting in damage.

2. TELEGRAPHS AND TELEPHONES—TELEGRAPH COMPANY HELD NOT LIABLE TO SENDER FOR ERROR IN TRANSMITTING PRICE QUOTATION, IN ABSENCE OF EFFORT TO SELL ELSEWHERE.—Where sweet potatoes, quoted at $2.75 per cwt. when shipped, were rejected because telegram containing quotation when delivered read $2.25 per cwt., *held* neither buyer nor seller was compelled to meet terms as understood by the other, and seller who, under mistaken belief that he was bound by telegram as transmitted, agreed to accept lower price, was not entitled to recover amount of loss from telegraph company, in absence of effort to make sale elsewhere.

3. DAMAGES—PARTY CLAIMING DAMAGES FOR NEGLIGENT BREACH OF CONTRACT HAS DUTY OF EXERCISING ORDINARY CARE TO MITIGATE DAMAGES.—Party claiming damages for negligent breach of contract has duty of exercising ordinary care to mitigate damages as far as reasonably practicable.

Before WILSON, J., Hampton, February, 1925. Reversed and remanded with directions for nonsuit.

Action by C. Bryan Harper and another against the Western Union Telegraph Company. Judgment for plaintiffs, and defendant appeals.

The following are defendant's exceptions:

I. It is respectfully submitted that his Honor erred in refusing defendant's motion for a nonsuit upon the following ground:

(1) Because the damage sustained by plaintiffs, if any, was not the direct and proximate result of the negligence

complained of on the part of the defendant, but was result of plaintiffs' own voluntary act:

(a) Because the evidence shows that the plaintiffs discovered the mistake in the telegram before the potatoes had been delivered to the Blalock Fruit & Produce Company, and while plaintiffs still had the right to control the disposition of same, and the action of the plaintiffs in instructing the bank to reduce the amount of the draft was a voluntary act on their part, and, if any loss was sustained thereby, the defendant cannot be held responsible therefor.

(b) Because it appears from the evidence that the plaintiffs used the defendant company as a means of communication with the Blalock Fruit & Produce Company, which, as a matter of law, does not make the defendant the agent of the plaintiffs, and the said plaintiffs were not bound to the Blalock Fruit & Produce Company for the result of the message by the terms of the transmitted telegram in which the defendant had negligently changed the price quotation.

(c) Because the plaintiffs were not bound by the terms of the telegram as delivered to the Blalock Fruit & Produce Company, but were only bound by the terms of the correct telegram filed with the defendant, and the loss, if any, which they sustained was caused solely by their voluntary action after full knowledge of the error made in the transmission of the telegram, whereas, they might have canceled the transaction or made other disposition of the carload of potatoes.

(2) It is respectfully submitted that the presiding Judge erred in directing a verdict for the plaintiffs because the delivery to the Blalock Fruit & Produce Company of the erroneous telegram did not create or give rise to a valid or enforceable contract between the said Blalock Fruit & Produce Company and the plaintiffs, and the plaintiffs were under no legal duty to deliver the potatoes in question to the Blalock Fruit & Produce Company at the erroneous

price quoted in said telegram, to wit, $2.25 per hundred, but, on the contrary, they should have sold the potatoes on the market as the best price obtainable.

(3) It is respectfully submitted that the Court erred in adopting as the measure of damages the difference between the price at which the plaintiff was willing and expected to sell the potatoes and the erroneous price quoted in the telegram delivered to the sendee.

(4) It is respectfully submitted that his Honor erred in directing a verdict for the plaintiffs, because the undisputed evidence shows that the loss, if any, sustained by the plaintiffs was not on account of the mistake made in the telegram, but was due to plaintiffs' own voluntary act in instructing the bank to reduce the amount of the draft after both plaintiffs and the Blalock Fruit & Produce Company had been advised of the mistake made in the transmission of the telegram.

(5) It is respectfully submitted that his Honor erred in directing a verdict for the plaintiffs when it appeared from the undisputed evidence that the alleged loss or damage to the plaintiffs of $167.64 was not the proximate result of the error made in the transmission of the telegram, but was due· to plaintiffs' own voluntary act after both they and the Blalock Fruit & Produce Company had been advised of the error made.

*Messrs. Francis R. Stark* and *Nelson & Mullins,* for appellant, cite: *Proximate cause:* 104 S. C., 475; 89 S. E., 387; 37 Cyc., 1754-1757; 87 Tenn., 554; 11 S. W., 783; 4 L. R. A., 660; 110 Ky., 907; 62 S. W., 1119; 18 Idaho, 389; 109 P., 910; 30 L. R. A., 409; 158 Ky., 143; 164 S. W., 348. *Telegraph Company independent contractor:* 88 S. C., 498; 70 ·S. E., 1040. *Duty to minimize damages:* 69 S. C., 539; 48 S. E., 538; 75 S. C., 208; 55 S. E., 318; 77 S. C., 157; 57 S. E., 722; 90 S. C., 507; 73 S. E., 1017. *Rule of stare decisis limited:* 42 S. C., 222; 15 C. J., 956; 7 R. C. L., 1008.

*Mr. W. D. Connor,* for respondent, cites: *Case governed by:* 88 S. C., 498; 70 S. E., 1040.

November 14, 1925.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action for $167.54 damages alleged to have been sustained by the plaintiffs as a result of the incorrect transmission of a telegram sent by the plaintiffs at Estill, S. C., to a produce company at Richmond, Va., relating to a contemplated sale by the plaintiffs to the produce company of a carload of sweet potatoes.

The facts of the case are as folows: On February 20, 1924, the produce company at Richmond wired the plaintiffs at Estill asking for a quotation upon a certain kind of potatoes. In reply the plaintiffs wired quoting the potatoes at $2.75 per cwt. f. o. b. Richmond. The telegram was delivered reading $2.25 per cwt. The produce company wired, accepting the offer, and ordering the potatoes. The plaintiffs shipped 33,528 pounds, order notify, and drew upon the produce company with bill of lading attached for the price at $2.75. The produce company replied that the price as stated in the telegram was $2.25, and asked the plaintiffs to have the collecting bank reduce the draft accordingly. After the passing of certain telegrams between the parties, the plaintiffs yielded· to the demand of the produce company, and instructed the bank to reduce the amount of the draft, upon the basis of $2.25, and deliver the bill of lading to the produce company. This was done, and the produce company secured delivery of the potatoes.

The reason assigned by the plaintiffs in their complaint for complying with the demand of the produce company is that the produce company "held the plaintiffs to the price of $2.25 per hundred pounds for said shipment," and "that plaintiffs, believing that they were under contract to deliver said potatoes to said consignee under the terms of the telegram as

received by said consignee, in connection with their accept-
ance, settled with said consignee at the price of $2.25 per
hundred weight."

It is also alleged in the complaint that the potatoes at the
time were worth $2.75 per cwt. delivered at Richmond. A
witness for the plaintiffs testified that at the time the ship-
ment in question arrived in Richmond potatoes of the char-
acter of those shipped by the plaintiffs were worth on the
market from $2.75 to $3.00 per cwt., and that he had paid
on the very dates $3.25 per cwt. In the "Agreed Statement
of Facts," which the parties by stipulation used upon the
trial in the Circuit Court, this statement occurs:

"That these potatoes were worth $2.75 per hundred
pounds delivered at Richmond, on the date of the delivery
and date of sale; that the market price at Richmond at said
times was $2.75 to $3.00 per hundred pounds."

And in the printed argument of counsel for the respond-
ents the same fact is conceded.

The case was tried before the Hon. John S. Wilson, Cir-
cuit Judge, and a jury. At the close of the evidence for the
plaintiffs, the defendant's attorneys made a motion for a
nonsuit upon grounds which will be reported. The mo-
tion was refused, and, thereupon, the presiding Judge, *sua
sponte,* instructed the jury to return a verdict for the plain-
tiffs for the amount claimed, $167.64, which was 50 cents
per hundred pounds on 33,528 pounds.

The defendant has appealed from the judgment entered
upon this verdict upon exceptions which fairly raise the
questions hereinafter discussed and disposed of.

It is conceded that the telegraph company was guilty of
negligence in incorrectly transmitting and delivering the
message contained in the proposal of the plaintiffs. The
telegraph company is liable, of course, for such damages
as resulted to the plaintiffs, proximately, as the law requires,
from such negligent failure. The question, therefore, for

determination is whether the plaintiffs have offered any evidence tending to establish such damages.

The case of *Eureka Cotton Mills v. Telegraph Company,* 88 S. C., 498; 70 S. E., 1040; Ann. Cas. 1912C, 1273, establishes the doctrine, in accord with the English rule, that in the transmission of a message the telegraph company cannot be considered as the agent of the sender, but must be considered as an independent liable both to the sender and the addressee for the breach of its duty resulting in damage. This effectually disposes of the assumption upon which the sellers acted in this case that, as the telegraph company was the agent of the sellers, they were bound by the acceptance of the buyers to carry out the proposed terms contained in the telegram erroneously transmitted. In *Watson v. Paschall,* 93 S. C., 537; 77 S. E., 291, following the *Eureka Case,* the Court held:

"The defendants, of course, were bound by the telegram as they sent it, and not as it was delivered."

The plaintiffs, therefore, in yielding to the demand of the produce company to comply with the terms of the proposal as contained in the erroneously transmitted telegram did what they were under no legal obligation whatever to do. The telegraph company not being the agent of the plaintiff, the minds of the contracting parties had not met upon the proposition for a sale at $2.25, and the plaintiffs had a perfect right to decline to deliver at that price. The produce company was alike free to decline a sale at $2.75, and if it did so, the course of the plaintiffs was clear to dispose of the potatoes at the best price obtainable.

The allegations of the complaint, the stipulations in the agreed statement of facts for the trial below, the testimony of the witnesses for the plaintiffs, and the printed argument of counsel for the plaintiffs, show that the market value of potatoes of the kind shipped in Richmond, on the very day of their delivery to the buyers, was from $2.75 to $3.00 per hundred pounds. The plaintiffs, acting upon the mis-

taken assumption that they were bound by the altered telegram (it is so alleged in the complaint), delivered the goods to the buyers without the slightest effort to realize more than the $2.25.

3 . In the case of a negligent breach of a contract, the party claiming to have been damaged, is under a legal duty to exercise at least ordinary care in lessening the damage as far as is reasonably practicable.

In *Hunter v. R. Co.,* 90 S. C., 507; 73 S. E., 1017, the rule is thus clearly stated:

"The rule is well settled, and it is supported by reason and the great weight of authority, that the duty rests upon one who is injured by the breach of a contract or the mere negligence of another to reasonably exert himself to avoid and to lessen the damages resulting therefrom; and such damages as may be avoided by the exercise of reasonable efforts, care and prudence on his part cannot be said to be the proximate result of the other's delict. Therefore, there can be no recovery for damages which might have been avoided. The efforts required of the injured party must be determined by the rules of common sense and fair dealing, and they include a reasonable expenditure of money. Of course, if the person whose duty it is to make such effort show reasonable grounds for his failure to do so, the rule must not apply."

. See, also, *Cobb v. Tel. Co.,* 85 S. C., 430; 67 S. E., 549; *Willis v. Tel. Co.,* 69 S. C., 539; 48 S. E., 538; 104 Am. St. Rep. 828; 2 Ann. Cas. 52; *Jones v. Tel. Co.,* 75 S. C., 208; 55 S. E., 318; *Sullivan v. Anderson,* 81 S. C., 478; 62 S. E., 862; *Fewell v. Catawba Power Co.,* 102 S. C., 452; 86 S. E., 947; *Carter v. R. Co.,* 75 S. C., 355; 55 S. E., 771. *Warren v. Stoddart,* 105 U. S., 224; 26 L. Ed., 1117. *Telfner v. Russ,* 145 U. S., 522; 12 S. Ct., 930; 36 L. Ed., 800. *Gulf R. Co. v. Texas Co.,* 244 U. S., 31; 37 S. Ct., 487; 61 L. Ed., 970.

"It is the duty of the plaintiff on learning of the negligence of the telegraph company to make reasonable efforts to render the resulting damage as light as possible, and he cannot recover damages which by such care and diligence he could have avoided."    37 Cyc., 1757.

The evidence shows beyond the shadow of a doubt that, as soon as the error was reported to the sellers and the buyers were insistent, the sellers could have disposed of the potatoes in Richmond for at least $2.75, and that their entire loss would have been the cost of passing telegrams and a commission to a Richmond broker for making the sale to some other party. The telegraph company, having caused the error in the proposal, was naturally interested in the method adopted for ascertaining the extent of the damage caused thereby. If they had been notified by the plaintiffs that they had on hand a carload of potatoes which had been shipped as a result of telegraphic information incorrectly transmitted, and that the buyer refused to accept them at the price named in the original telegram, the telegraph company would have been entitled to a word at least in the disposition of the potatoes. They might, and doubtless could, in the condition of the market concededly existing have disposed of them at $2.75, in which event neither the plaintiffs nor the telegraph company would have lost a cent. The plaintiffs had no right to adopt their own method of fixing the damage without notice to the telegraph company, equally interested with them in the adjustment.

The fact that the original proposition was to sell at $2.75 and the acceptance was to buy at $2.25 has little to do with fixing the amount of the plaintiffs' damage. The situation in which the plaintiffs were placed by the erroneous transmission of their proposal was that they had on hand in Richmond a carload of potatoes which they expected to sell to the produce company at $2.75. The produce company was under no obligation to buy them at $2.75, and the plaintiffs were under no obligation to sell them at $2.25.

If the produce company had refused to buy at $2.75, and the plaintiffs had shown that, owing to the distance that separated them from Richmond, the perishable character of the potatoes, the pending demurrage charges, the congested condition of the market, or other circumstances, they did the best they could in closing with the produce company at $2.25, their case would have been quite different.    But they make no such claim, and rely solely upon the assumption that they were bound by the erroneous telegram.

The case of *Postal Tel. Co. v. Schaeffer,* 110 Ky., 907; 62 S. W., 1119, is strikingly similar in its facts to the case at bar.    There the sellers wired a quotation of potatoes at $1.70 per barrel.    The telegram was delivered to the buyers reading $1.07.    The potatoes were shipped.    Upon arrival they were declined by the buyers on account of disagreement as to price, and were allowed to stand on side track until their value was practically destroyed in demurrage and decay.    The buyers then sued the sellers, and recovered a judgment for damages for the breach of the contract, upon the theory that the sellers were bound by the terms of the altered telegram.    The sellers then sued the telegraph company for damages, including the judgment which they had to pay and loss of profits.    The Court held that the judgment in favor of the buyers was erroneous; that the sellers were under no obligation to carry out the altered proposition; and that it was their duty to have disposed of the potatoes on the market and to have billed the telegraph company with the difference between price quoted and what could have been obtained on the market, with such additional expense as they may have been subjected to in consequence.

In *Tel. Co. v. Southwick* (Tex. Civ. App.), 214 S. W., 987, it is said:

"If the plaintiff were not bound by the contract, he could not, after discovery of the mistake, proceed nevertheless to carry out the contract and hold the defendant liable."

In *Miller v. Tel. Co.,* 157 Mo. App., 580.; 138 S. W., 887, a buyer offered a certain price for corn in a telegram to the seller. The telegram as delivered stated a higher price than the buyer had proposed. Before anything was done the error was discovered. The seller then bought corn to comply with the proposition as altered. It was held that he could not recover. The Court said:

"The respondents instead of exercising reasonable diligence to mitigate the damages, if any, consequent upon the negligence of appellant in failing to transmit said telegram correctly, voluntarily in effect contracted anew for the grain, the evident purpose of which was to base their claim for damages in suit."

The Court has been asked by counsel for the telegraph company to review and overrule the case of *Eureka Mills v. Tel. Co.,* 88 S. C., 498; 70 S. E., 1040, Ann. Cas., 1912C, 1273. So much of the opinion as holds that in the transmission of a telegram the telegraph company cannot be held to have been the agent of the sender so as to bind the sender to the terms of the telegram as delivered, regardless of its accuracy, but that it must be considered as an independent contractor, engaged as a common carrier in transmitting intelligence for hire, and is liable to the sender or to the addressee for damage resulting proximately from its negligence in performing such public duty, is in accord with the English rule upon the subject, and meets with the unqualified approval of the Court as now constituted. With this much of the opinion the telegraph company in the case at bar has no complaint, for it is in line with their defense that the sellers were under no obligation to comply with the altered terms of their proposition, and cannot visit upon the telegraph company the consequences of their voluntary action. Counsel for the telegraph company, however, contend that the foregoing ruling, which they do not object to, in fact base their defense upon, should have led the Court to

the conclusion that there was no basis for a judgment against the telegraph company in that case.

The facts were these: The Jenckes Spinning Company, at Pawtucket, R. I., sent a telegram to the Eureka Cotton Mills at Lancaster, S. C., inquiring if the Eureka Mills would authorize them to sell for the mill, on commission, 100,000 pounds of yarn at 24 cents. The mill replied, specifying 24½ cents as their best price. The telegram as delivered to Jenckes read "24 cents" instead of 24½. Upon receipt of the telegram so altered Jenckes accepted an offer from a third party for the yarn on a basis of 24 cents, and so notified the mill. The latter before taking any steps to fill the order, discovering the mistake from the telegram of Jenckes accepting the proposition at 24 cents, immediately wired explaining the error, and refusing to sell at 24 cents. Afterwards the mill, on the demand of Jenckes, yielded its position and shipped the yarn, we assume, to the customer with whom Jenckes had contracted, at 24 cents, and then brought suit against the telegraph company for the difference of one-half cent per pound, the damage sustained, under an allegation that the yarn was worth 24½ cents, and that they had been compelled by the error to accept 24 cents. It is exceedingly difficult to tell upon what theory the leading opinion sustains a judgment for the mill other than that the telegraph company was not the agent of the mill and was liable for whatever damage the mill sustained by reason of the error, which was a question for the jury to decide. It appears to proceed mainly upon the ground that the mill could not obtain more than 24 cents by reason of the fact "of its having to furnish this large order within a limited time."

It appears that the judgment could have been so easily sustained upon the theory that Jenckes, as the agent of the mill, had on its behalf, induced by the erroneous telegram, entered into a contract with a third party upon the basis of 24 cents, which contract the mill was bound to carry out,

as it had been made by its agent within the apparent scope of his authority, and that in carrying out this contract it had sold the yarn at 24 cents, when it was worth 24½, a clear case of damage to that extent. The terms of the telegram from Jenckes to the mill show that Jenckes was a middleman—a selling agent for the mill. Mr. Justice Woods in his concurring opinion manifestly so construed it, as he says:

"This was an inquiry if the plaintiff would authorize Jenckes Spinning Company to sell for it on commission 100,000 pounds of yarn at 24 Cents."

If so, the mill was bound by the contract which Jenckes made.

MR. JUSTICE WOODS, concurring in the result, takes the position that, although the mill had in its own right no cause of action against the telegraph company, it had the right to be subrogated to the rights of Jenckes, who would have been entitled to damages, if he had complied with the original proposition of 24½ cents. As a matter of fact, Jenckes did not comply, and was enabled by the complaisance of the sellers to carry out his sale to the third party upon the basis of 24 cents, and therefore suffered no damage. He appears to found the right of subrogation largely upon the fact that the law at that time was uncertain; a consideration which cannot benefit the plaintiffs in the case at bar, when it has been settled for more than 14 years.

The facts in the *Eureka Case,* are so fundamentally different from the facts of the case at bar that we do not think, properly construed, that that case is at all decisive of the issue here. Being of the opinion that the *Eureka Case* is rightly decided in its result, although based to some extent upon a misconception of the real point in the case, it should not be overruled.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for judgment of nonsuit under rule 27.

MESSRS. JUSTICES MARION and ACTING ASSOCIATE JUSTICE R. O. PURDY concur.

MR. JUSTICE WATTS (dissenting): This is an appeal from a directed verdict in favor of the respondents by his Honor, Judge Wilson, and in refusing motion for nonsuit made by the appellant.

Appellant asked this Court to review and overrule the case of *Cotton Mills v. Telegraph Co.*, 88 S. C., 499; 70 S. E., 1040, Ann. Cas., 1912C, 1273. That case was tried by Judge Hydrick as Circuit Judge. On appeal, the opinion was written by Acting Associate Justice Hon. Robert Aldrich, and was concurred in by Chief Justice Jones and Mr. Justice Gary (present Chief Justice). Judge Woods concurred in the result.

We are satisfied with that opinion, and see no reason to overrule it. It is decisive of the present appeal, and I think all exceptions should be overruled and judgment affirmed.

MR. CHIEF JUSTICE GARY concurs.