(117. So. 134)

No. 28509.

# WINKLE TERRA COTTA CO. v. BUTLER et al.

April 9, 1928. Rehearing Denied May 7, 1928.

Joseph H. Levy, of Shreveport, for appellant Winkle Terra Cotta Co.

Pugh, Grimmet & Boatner, of Shreveport, for appellant United States Fidelity & Guaranty Co.

L. Percy Garrot, of Shreveport, for appellant W. G. Butler.

BRUNOT, J. The substance of plaintiff's petition is that defendant W. G. Butler contracted with the Caddo parish school board for the construction and erection, in the city of Shreveport, of a building known as the Louisiana Avenue grammar school, and the United States Fidelity & Guaranty Company, of Maryland, became his surety for the faithful performance of the contract, and, as such, signed the statutory bond; that both parties to the building contract and the surety named are indebted to plaintiff, in solido, in the sum of $6,337.05, being the balance due for material furnished by plaintiff to the builder and used by him in said building. The prayer is for a judgment, in solido, against Butler, the

school board, and the surety, the three parties made defendants, for the sum sued for, with recognition of plaintiff's lien and privilege, as subcontractor and furnisher of materials, upon the building and site, for that sum. When the petition was filed Butler admitted an indebtedness to plaintiff of $5,337.-05, which amount he deposited in the registry of the court. The plaintiff accepted the amount thus tendered, with a reservation of its right to prosecute the suit for the sum of $1,000, the alleged remaining balance due on the account.

At this time the building had been completed and accepted, and liens of other furnishers of material and of laborers had been recorded. For this reason the Caddo parish school board provoked a concursus and deposited the balance due by it, under the contract, in the registry of the court. All parties asserting liens were heard, and a separate judgment was rendered upon the demand of each claimant. In the concursus proceedings the United States Fidelity & Guaranty Company, the surety, called Butler, the contractor, in warranty, and prayed for the same judgment against the contractor that might be rendered against it.

Judgments were rendered against the contractor and his surety, and in favor of all claimants except the plaintiff, Winkle Terra Cotta Company, whose demand for a judgment for $1,000, the sum in contest, was rejected. From this judgment the plaintiff appealed. Defendants Butler and the United States Fidelity & Guaranty Company also appealed from the judgments rendered against them.

■ The only matters stressed in the brief of appellant United States Fidelity & Guaranty Company is that the judgment rendered in favor of the lienholders are judgments, in solido, against the contractor and the surety and that the surety is entitled to the same judgment against the contractor, who was called in warranty, as was rendered against it. This contention is correct and it should be sustained. The omission complained of was, doubtless, the result of an oversight.

The only matter on appeal in which the plaintiff, Winkle Terra Cotta Company, and the defendant Butler, seem to be interested, is the judgment which dismisses the plaintiff's demand.

We therefore consider all other questions, except the right of the surety to judgments against the defendant Butler, upon its call in warranty, as foreclosed by the several judgments rendered.

■ The Winkle Terra Cotta Company had an authorized agent in the city of Shreveport. It is shown that the contractor, Butler, before submitting a bid to the Caddo parish school board for the contract to build the Louisiana Avenue grammar school building, negotiated with the plaintiff's agent for the purchase of the terra cotta called for by the plans and specifications for the building. The agent communicated with the plaintiff and received from the latter a telegram reading:

"Public grammar school ten thousand four hundred eighty-three dollars standard finish, freight allowed wall anchors included."

On receipt of this telegram it was shown to the contractor by plaintiff's agent, and the proposal was immediately accepted and acted upon by the contractor, who prepared and submitted a bid to the school board, based upon the price for the terra cotta as proposed in said telegram.

A few days thereafter it developed that, in transmitting the telegram, the Postal Telegraph Company had erroneously substituted the word "ten" for the word "thirteen." As a result, the telegram which was delivered to plaintiff's Shreveport agent, and the price fixed therein, which the contractor accepted and acted upon, was $3,000 less than the actual proposal made in the original telegram

as delivered by plaintiff to the telegraph company. When the plaintiff learned of this error, it refused to carry out the contract. Letters and conferences between the plaintiff and contractor followed and finally an agreement was reached. We quote that agreement:

"St. Louis, Mo., February 16, 1924.

"W. G. Butler, Contractor, 403 Atkins Ave., Shreveport, La.—Dear Sir: We propose, subject to accompanying conditions, to furnish the Architectural Terra Cotta Standard finish for building public school to be erected for ———, at Louisiana Ave., Shreveport, La., as per drawing by Edw. F. Neild, architect, for the sum of eleven thousand four hundred eighty-three dollars ($11,483.00), the material to be delivered on cars at St. Louis, freight allowed to Shreveport, La. Wall anchors included. Terms: Net thirty days from date of shipment. Acceptance constitutes a binding contract between us.

"Yours truly,
"The Winkle Terra Cotta Co.,
"John G. Hewitt,
"Secretary & Treasurer.

"(Hand written): Subject to attached letter.
"Accepted: W. G. Butler."

"Feby. 17th, 1924.

"The Winkle Terra Cotta Company, 502, 503 Century Bldg., St. Louis, Mo.—Sirs: I wish to inform you that I have this day signed a contract with you, in which you agree to furnish terra cotta for the Louisiana Street grammar school building for the sum of eleven thousand four hundred eighty-three dollars ($11,-483.00), with the understanding that the price incorporated in this agreement is $1,000.00 more than your original agreement to sell for $10,483.00, which I used in my estimate. It is clearly understood that this letter is to be a part of our agreement and attached to it, that I will pay you the additional amount ($1,000.00) only if you deliver all of the material as stated in your telegram dated February 6th, 1924, in which you stated that you will begin shipping in eight or nine weeks and complete in thirteen weeks; the time beginning February 14th, 1924, and I likewise agree to pay this additional $1,-000.00 only in the event that you fail to collect the amount of the error ($3,000.00) from the Postal Telegraph Company.

"I trust the terms are satisfactory to you, and beg to remain,

"Yours truly,      W. G. Butler."

We will say here that it is shown that the maximum liability of the Postal Telegraph Company for the error of its employees in transmitting plaintiff's telegram to its Shreveport agent is $500, and that plaintiff's recovery of any sum whatever because of that error is contested. Therefore the defendant's proviso, in the agreement, to pay the $1,000 only in the event that plaintiff failed to collect $3,000 from the telegraph company, need not be considered.

Plaintiff contends that its agent's proposal to defendant and the latter's acceptance thereof did not ripen into a contract, that the agreement quoted supra is the only contract between the parties, and that plaintiff has substantially complied with that contract, and, finally, that the Postal Telegraph Company was not plaintiff's agent and plaintiff's rights were not affected by the error of that company. Plaintiff cites in this connection Harper v. Western Union Telegraph Co., 133 S. C. 55, 130 S. E. 119, 42 A. L. R. 286, in which case it is held that:

"(1) One whose price quoted by telegram is accepted by an intending purchaser is not bound to deliver if price is misquoted in the message through negligent change by the company.

"(2) A telegraph company is not, in the transmission of a message, the agent of the sender, but is an independent contractor and common carrier of intelligence for hire, and is liable to both the sender and the addressee for a breach of its duty resulting in damage."

It is argued that the original agreement did not ripen into a contract between the plaintiff and the defendant, because the plaintiff promptly repudiated that agreement when it discovered that the price given in its telegram to its agent had been misquoted through an error of the telegraph company, and, for this reason, there was no meeting of the minds of plaintiff and defendant, and therefore there was no contract.

The defenses are that the original proposal by plaintiff's agent and defendant's acceptance thereof was a completed contract; that it was entered into in good faith, by defend-

ant, and was acted upon by him; that the subsequent agreement was a mere repetition of the obligations imposed upon the contracting parties by the original contract, with an added stipulation in which the defendant obligated himself to pay to the plaintiff $1,-000 more than the price originally quoted to and accepted by him, provided the plaintiff complied strictly with the provisions of the original proposal as to quantity and kind of material and the time limit in which it was to be delivered; that the material was not delivered within the time fixed by plaintiff's original proposal; and that defendant's agreement to pay the additional $1,000 was without consideration, but was in the nature of a bonus, payable only upon the plaintiff's compliance with the conditions named.

The original and subsequent agreements are identical in all respects, except as to defendant's promise, upon certain conditions, to absorb $1,000 of the loss sustained by the plaintiff as the result of the error of the Postal Telegraph Company. On the faith of this promise, the plaintiff agreed to supply the defendant with the same kind and quantity of materials, and to make deliveries of it within the same period of time, as was provided in its original proposal. It furnished the quantity and kind of material called for by the contract, but it defaulted as to the time within which shipments were to begin and the time within which all of the material was to be delivered. The contract provides that shipments were to begin within eight weeks or nine weeks after February 14, 1924, or on April 18, 1924, and the shipments were to be completed in thirteen weeks thereafter. The first shipment under the contract was made on April 25, 1924. On April 22, 1924, the defendant wired the plaintiff as follows:

"Please ship at earliest possible moment. We are on second floor corridor and auditorium half completed. Thirty masons working. Will be tied up next week unless terra cotta arrives."

The defendant also sent a man to St. Louis to expedite the first shipment of material. Plaintiff argues that these acts of defendant were a waiver of the time clause of the contract. We think the defendant waived that provision of the contract fixing the date on which shipments were to begin, but, in our opinion, this waiver does not affect the stipulation of the contract requiring delivery of all of the material called for by it within thirteen weeks after April 18, 1924. It is shown that plaintiff made its first shipment under the contract on April 25, 1924, and thereafter twelve weeks of the time remained in which all of the terra cotta called for by the contract could have been shipped. It is not shown that twelve weeks was an unreasonable time within which to make all of the deliveries, or that plaintiff, with reasonable diligence, could not have complied with that provision of the contract. Plaintiff relies upon and quotes at length from the case of Tremont Lumber Co. v. Robinson Lumber Co., 160 La. 254, 107 So. 101.

That case applies only to the waiver of the time in which the shipments should begin. In the cited case the defendant ordered a car of lumber to be delivered in a specified time. The plaintiff accepted the order, but did not deliver the lumber within the time fixed. This breach of the contract justified defendant in canceling it, but defendant insisted upon performance. His demand was complied with and thereafter he refused to pay for the lumber for the reason that it was not delivered within the time fixed in the contract.

In the case at bar defendant contracted for a quantity of terra cotta. The first shipment was to be made on or before a fixed date, and all shipments were to be made within thirteen weeks after that date. Plaintiff breached the contract as to the date of the first shipment, and we have stated that defendant waived that breach of it by insisting upon performance. In so holding we have

followed the Tremont Lumber Company Case in this opinion.

In the case of Lagrave v. Fowler, 4 La. Ann. 243, cited, it was *impossible* to furnish the marble contracted for within the time fixed because the quarries were inundated. That case has no application to the facts of the case before us.

Under our view of the case, the original proposal and acceptance was recognized in the subsequent agreement. Before that agreement was reached plaintiff refused to carry out the original contract, and thereby suffer the entire loss occasioned by the error of the telegraph company, but, upon obtaining defendant's consent to absorb $1,000 of the loss, provided the plaintiff would comply with that contract as to quantity and quality of material and the time limit in which it should be delivered, the plaintiff thereupon assumed every obligation imposed upon it by the original contract.

In this case, we think time was the essence of the agreement to pay the $1,000, and it is admitted that plaintiff defaulted in respect to the time within which the deliveries should have been made. We do not think any of the authorities cited by plaintiff apply where recovery is sought in a case such as this.

For the reasons stated, we think the judgment rejecting plaintiff's demand is correct.

The attorney for the Caddo parish school board has answered the appeal, and prays that the judgment be so amended as to allow him $400 as attorney's fees. The construction of public works is governed by Act 224 of 1918. This act makes no provision for attorney's fees, if not timely demanded and the courts cannot legislate.

It is therefore decreed that the judgment in favor of George Sproull be amended so as to read:

"It is further ordered, adjudged, and decreed that there be judgment in favor of the United States Fidelity & Guaranty Company, in its call in warranty, and against W. G. Butler, in the full sum of $378.54, with 5 per cent. per annum interest thereon from November 4, 1924, until paid, and all costs of this suit,"

—and that each one of the following judgments be amended in the same manner, viz.:

The judgment of John T. Jeter for $532.85, with 5 per cent. per annum interest thereon from August 9, 1924, until paid, and 10 per cent. additional on said principal and interest as attorney's fees, and costs of this suit;

The judgment in favor of A. B. Cowan for $200, with legal interest thereon from November 30, 1924, until paid, and 10 per cent. on said principal and interest as attorney's fees. and costs of suit;

The judgment in favor of S. R. Slaton for $38, with legal interest thereon from October 18, 1924, until paid, together with 10 per cent. on the principal and interest as attorney's fees, and costs of suit;

The judgment in favor of O. Y. Caldwell for $78.81; the judgment in favor of Fred Spreull for $56; the judgment in favor of Jack Sawyer for $25; the judgment in favor of E. E. Rice for $54; the judgment in favor of M. C. Roacy for $17; the judgment in favor of W. W. Macon for $39.50; the judgment in favor of J. F. Burt for $36; the judgment in favor of W. L. Gilchrist for $24; the judgment in favor of J. D. Ferguson for $8; and the judgment in favor of S. E. Reno for $8—with legal interest on each of said judgments from October 18, 1924, until paid, together with 10 per cent. on the principal and interest on each of said judgments as attorney's fees, and for costs of suit.

And, as thus amended, the judgments are affirmed, the cost of the appeal to be divided between the plaintiff and defendant W. G. Butler, appellants, neither of whom secure any definitive relief by their appeals.